PERKINS SASH & DOOR CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 9910.   Promulgated December 17, 1926.

> Petitioner has not shown that it was entitled to a greater in-
> vested capital than that determined by the Commissioner, or that
> the Commissioner's determination in respect of the allowance for
> exhaustion, wear and tear of the property was erroneous; nor has
> it shown that the Commissioner's adjustment of the closing inven-
> tories for the fiscal years ending July 31, 1920 and 1921, was
> erroneous.

*G. S. Alexander, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

The Commissioner determined deficiencies in income and profits
taxes in the amounts of $1,026.44 and $734.09, respectively, for the
fiscal years ending July 31, 1920 and 1921. The petitioner claims
that the Commissioner erred in his determination (1) in respect of
the value of the property, alleged to have been paid in to the cor-
poration, for invested capital and depreciation purposes, (2) in
reducing the inventories of July 31, 1920 and 1921, and (3) in re-
ducing surplus in each of the years on account of prior year's tax.

### FINDINGS OF FACT.

The petitioner is a Georgia corporation with principal office at
Augusta. At some date prior to July, 1913, the National Bank of
Augusta had loaned approximately $41,272.05 to the Woodward
Manufacturing Co., for which that company gave the bank mort-
gages on certain of its properties and equipment. The Woodward
Company failed and certain of its properties were taken over by the
bank. Thereafter, the National Bank of Augusta was liquidated by
the officers of the Citizens & Southern Bank of Augusta. During
this liquidation the National Bank of Augusta, through its liquidat-
ing agents, sold certain miscellaneous property of the Woodward
Manufacturing Co. for $8,408.15 and, in July, 1913, they sold the
plant of the Woodward Manufacturing Co. to H. R. Perkins and
H. C. Maxwell for $15,000; $2,500 being paid in cash, and interest-
bearing promissory notes of Perkins and Maxwell were given for the
balance, payable $2,500 annually. The National Bank of Augusta
gave Perkins and Maxwell a bond for title, in which it agreed to
transfer title when the deferred payments had been made.

At the end of each of the fiscal years involved a physical inventory
was taken by petitioner of all of its materials and supplies on hand,
including the finished products.

It was petitioner's established custom to price the inventory at selling prices and to reduce the total thereof by 33⅓ per cent to bring it to cost. For the fiscal year ending July 31, 1920, the inventory of moldings and sundry manufactured articles priced at selling prices amounted to $3,929.90, and before this amount was added to the total of the inventory of all other materials, supplies, and the manufactured product, it was reduced by 33⅓ per cent, or $1,309.97, making the total of this portion of the inventory $2,619.93.

The detailed and itemized inventory of all departments was then totaled and summarized, and adjusted to arrive at the total inventory for the year as follows:

| | |
|---|---:|
| Sheets 1 to 3. Frame Room | $1,242.15 |
| Sheets 4 to 7. Glass & Glazing Dept | 2,546.20 |
| Sheets 8 to 14. Sash Door & Blind Dept | 4,158.85 |
| Sheets 15 to 17 Sundries & Moldings (reduced from $3,927.90 as above stated) | 2,619.93 |
| Sheets 18 to 23. Lumber and Supplies | 17,486.08 |
| Selling Values | 28,053.21 |
| Less: Blythe School Building charged on books—not made ........ $1,000.00 | |
| 33⅓ per cent ........ 9,693.34 | |
| | 10,693.34 |
| Total closing inventory | 17,359.87 |

The Commissioner adjusted this inventory by eliminating the reduction of $1,309.97 in the inventory price of moldings and sundries, allowing a reduction of 33⅓ per cent on the total inventory thus determined, after deducting therefrom the Blythe School Building item of $1,000 resulting in a closing inventory for the year of $18,908.79, an increase of the closing inventory as shown by the petitioner of $1,548.92, which it claims was erroneous.

The petitioner followed the same method in pricing its inventory at July 31, 1921. In this year, before totaling the inventory of all departments and reducing it by 33⅓ per cent to arrive at the cost, the inventory price of lumber, sash weights, feed and supplies, amounting to $12,176.91, was reduced 25 per cent, or $3,044.23, resulting in an inventory value for these departments of $9,132.68. The total selling price of the inventory thus priced amounted to $21,492.16, and this amount was then further reduced by 33⅓ per cent, or $7,164.05—the "difference between cost and selling values" resulting in a closing inventory for the fiscal year ending July 31, 1920, of $14,328.11. The Commissioner adjusted the inventory by eliminating the arbitrary reduction of $3,044.23, being 25 per cent of the item of $12,176.91 above mentioned, and arrived at a total inventory at a selling value of $24,536.39, which was reduced by 33⅓ per cent,

or $8,178.79, resulting in a closing inventory for the year of $16,357.60, an increase in the inventory as shown by the petitioner of $2,029.49, which it claims was erroneous.

There was a marked decline in the lumber market shortly prior to July, 1920.

### OPINION.

LITTLETON: The Board is unable from the evidence submitted to make any modification in the Commissioner's determination in respect of the invested capital and his allowance for exhaustion, wear and tear of the property owned by the petitioner. The record does not disclose what action the Commissioner took in this regard, nor does it show what property was paid in to the corporation for stock or otherwise, and it contains no information from which the Board can make a finding of the value of any property for invested capital or depreciation purposes. Considerable testimony was taken by depositions, apparently in an effort to show that certain property purchased by Perkins and Maxwell from the National Bank of Augusta at $15,000 had a value in excess of that amount, but there is no evidence to show that this property was acquired by the petitioner for stock or otherwise, or that it was owned by it during the taxable year. We have carefully considered the evidence submitted in support of the claim that the property purchased by Perkins and Maxwell had a cash value of $30,000, and even if we could find that this property was paid in to the petitioner by them we are not convinced from the evidence that its actual cash value was in excess of $15,000.

The Board is unable from the evidence submitted to find that the Commissioner erred in his determination of petitioner's inventories for the taxable years. The Commissioner has approved petitioner's method of pricing its inventories, but has declined to allow the arbitrary reductions of the amounts at which certain portions of the inventories were priced by 33⅓ per cent in the year ending July 31, 1920, and 25 per cent in the year ending July 31, 1921. These inventories were priced by H. C. Maxwell, now deceased. Another official of the company, who listed practically the entire inventory in each of the years and who conferred with Maxwell during the time that he was pricing the same, testified that the reductions made by Maxwell and disallowed by the Commissioner were due to the decline in market. This evidence, however, does not enable the Board to determine that the Commissioner erred in his adjustment of the inventories. We fail to see why the prices placed upon each individual article when pricing the inventories did not represent the correct price according to the method followed, and if they did

there was no justification in the arbitrary reductions of 33⅓ per cent in 1920 and 25 per cent in 1921 of a portion of the inventories. It would appear from the record that, when the entire inventories had been priced, item by item, and totaled, Maxwell concluded that the total figure was too high and arbitrarily made the reductions mentioned before the 33⅓ per cent from the total inventory was taken. Upon the evidence we approve the Commissioner's adjustment.

The action of the Commissioner in reducing the surplus for each of the years on account of the tax for the preceding years is approved. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

> *Judgment will be entered on 15 days' notice,*
> *under Rule 50.*